**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
:
In re:                                          :
                                                :      Chapter 13
                                                :
    Ahamad Aziz,                            :      Case No. 10-16696 (SCC)
                                                :
                                                :
                   Debtor.        :
                                                :
------------------------------------------------------------x

MEMORANDUM DECISION GRANTING (A) DEBTOR'S MOTION
TO DETERMINE THE VALUE OF AND VOID THE JUNIOR LIEN OF
BANK OF AMERICA ON DEBTOR'S PRIMARY RESIDENCE
AND (B) DEBTOR'S OBJECTION TO CLAIM NUMBER 9


APPEARANCES:

The LAW OFFICES OF DANIEL M. KATZNER, P.C.
*Attorney for the Debtor*
1025 Longwood Avenue
Bronx, NY 10459
By:    Daniel M. Katzner, Esq.

STEVEN J. BAUM, P.C.
*Attorneys for Bank of America, N.A.*
220 Northpointe Parkway, Suite G
Amherst, NY 14228
By:    Natalie Grigg, Esq.

JEFFREY L. SAPIR
*Chapter 13 Trustee*
399 Knollwood Road, Suite 102
White Plains, NY 10603
By:    Jody S. Kava, Esq.


       Before the Court is the motion of the Debtor, Ahamad Aziz (the "Debtor"), pursuant to

sections 502 and 506(a) of the Bankruptcy Code and Bankruptcy Rules 3012 and 9014, to

determine the value of the interest of Bank of America, N.A. ("Bank of America") in the

Debtor's primary residence located at 1228 Noble Avenue, Bronx, New York (the "Property") and void the junior lien of Bank of America on the Property; and (B) the Debtor's objection to the proof of claim filed by Bank of America (the "Motion").[1]  The Motion was filed on February 23, 2011.  Bank of America filed its opposition to the Motion (the "Opposition") on March 29, 2011.[2]

On July 27, 2011, the Court held an evidentiary hearing (the "Hearing") on the Motion in which the Debtor and Bank of America each presented an expert witness who offered testimony in support of their respective appraisals of the property.  Prior to the Hearing, both parties filed expert reports of their appraisers.  The Debtor's appraiser, Michael H. Haynes of Home Town Appraisals Inc. ("Mr. Haynes"), conducted an appraisal which valued the Property at $375,000.  Bank of America submitted an appraisal by John Chang, principal and founder of E-Value Appraisals ("Mr. Chang"), which valued the Property at $420,000.  Both Mr. Haynes and Mr. Chang testified at the Hearing.  On September 16, 2011, the Debtor and Bank of America each filed a post-hearing brief.

The Property is subject to a first lien mortgage (the "First Mortgage") in the amount of $390,921.87, as of February 21, 2011.  The Property is also subject to a second lien mortgage held by Bank of America (the "Second Mortgage") in the amount of $168,338.19.  By the Motion, the Debtor asserts that the value of the Property is not more than the amount outstanding on the First Mortgage; as a result, he asserts, the Second Mortgage lien is wholly unsecured and, accordingly, is void.  Bank of America submits that the value of the Property exceeds the amount of the First Mortgage, that its claim is therefore entitled to partially secured status, and that its junior lien should accordingly not be voided.

---

[1]  Debtor's Mot. to Avoid Lien, ECF No. 12.
[2]  Opp'n to the Debtor's Mot. to Avoid Lien, ECF No. 28.

For the reasons set forth below, the Motion is hereby granted.

## BACKGROUND

The Debtor filed a voluntary chapter 13 petition on December 18, 2010. He obtained an appraisal of the Property on January 5, 2011, which valued the Property at $350,000.00. The Property is the Debtor's primary residence. In his proposed chapter 13 plan (the "Plan"), filed on December 18, 2010 (which has not yet been confirmed), the Debtor requested "Loss Mitigation" on the Property pursuant to this District's Guidelines. The Plan was served on all creditors.

According to the Debtor's Schedule D, the Property is subject to two outstanding mortgages. Wells Fargo Home Mortgage, by America's Servicing Company, filed a proof of claim evidencing the First Mortgage on the Property, with a principal unpaid balance in the amount of $390,921.87 as of February 21, 2011, including prepetition arrears.[3] Interest continues to accrue on this loan. Bank of America filed a proof of claim on February 17, 2011, reflecting a Second Mortgage on the Property with a principal unpaid balance in the amount of $168,338.19.[4]

## DISCUSSION

Applicable Law

Whether a debtor is entitled to void a junior lien on his or her primary residence is governed by "the interaction of two provisions of the Bankruptcy Code – Section 506(a) and Section 1322(b)(2)." Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 124 (2d Cir. 2001).

Section 506(a) determines the classification of a creditor's claim. It provides, in relevant part, that:

---

[3] Claim No. 11.
[4] Claim No. 9.

3

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

The Second Circuit has held that a debtor has the right to void a wholly unsecured junior lien through a chapter 13 plan pursuant to section 1322(b)(2) of the Bankruptcy Code. In re Pond, 252 F.3d at 126. Section 1322(b)(2), which has been described by some courts as the "anti-modification exception," provides that a chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added). If the creditor's claim is at least partially secured, the anti-modification exception of section 1322(b)(2) applies to protect the creditor's entire claim. In a case in which senior liens amount to an encumbrance that is greater than the value of the property, however, the junior lien will not be entitled to protection against modification pursuant to section 1322(b)(2) because the lien is not a "secured claim" within the meaning of section 506(a). Therefore, the Court must first look to section 506(a) to determine whether any part of a junior creditor's claim is secured.

A debtor may eliminate a creditor's lien if it is shown that the amount due on superior liens exceeds the value of the property, thus leaving the creditor's claim unsecured. In re Pond, 252 F.3d at 126. A creditor's rights will only be protected where "the debtor's residence retains enough value – after accounting for other encumbrances that have priority over the lien – so that the lien is at least partially secured under section 506(a)." Id.

4

In order to determine the rights of Bank of America with respect to the Property, the Court must therefore determine the value of the Property. For this, the Court looks to the appraisals submitted by the parties and the testimony offered by the appraisers at the Hearing in support of their respective valuations of the Property.

The Appraisals of the Property

The Debtor's appraiser, Mr. Haynes, conducted an appraisal which valued the Property at $375,000. Bank of America submitted an appraisal by Mr. Chang which valued the Property at $420,000. At the Hearing, both experts acknowledged that the appraisal of real property is a subjective process. Both appraisers used methods which included examining sales of allegedly comparable properties, estimating the potential rental income of the Property, and estimating the cost of building a similar house on the land on which the Property is situated. They agreed that, of these methods, comparable sales provide the most accurate basis on which to value the Property.

Perhaps not surprisingly, the comparable properties selected by each of the appraisers served as one of the most significant differences between the two appraisals.[5] Simply put, the selection of the comparables largely dictated each appraiser's conclusion as to value. The Property is fully "attached" on both sides, with no space or differentiation between it and the neighboring properties. Each appraiser's selection of fully "attached" versus "semi-attached" versus free-standing properties as comparables had a significant effect on the appraiser's conclusion as to the value of the Property.

Mr. Haynes selected three comparable properties to serve as benchmarks for his appraisal, two of which are fully "attached" and one of which is "semi-attached." Each

---

[5] The appraisers also used income and cost analyses; while the Court considered these analyses, it will not discuss them in detail, as it affords them less weight.

5

comparable property is one for which an actual, documented sale occurred in 2011. The first comparable chosen by Mr. Haynes is located at 1132 Beach Avenue, Bronx, New York (the "Beach Avenue Property"). This property deserves special consideration, both because it received the most weight in Mr. Haynes' analysis and because it is the only comparable used by both appraisers. When comparing the value of the Beach Avenue Property to that of the Property, Mr. Haynes made the following adjustments: (i) a $5,000 reduction because it is semi-attached (a completely attached house is less valuable than a semi-attached house), (ii) a $8,000 reduction because it is approximately 300 square feet larger than the Property, (iii) a $5,000 reduction because it has one bathroom more than the Property, and (iv) a $2,500 addition because, unlike the Property, it does not have a driveway. Starting from an actual sale price of $409,000, after these adjustments, Mr. Haynes determined that the adjusted value of the Beach Avenue Property would be $393,500. The additional comparables selected by Mr. Haynes are both attached properties located within one mile of the Property, they are: (i) 1334 Taylor Avenue, which he valued at $365,000; and (ii) 1444 Rosedale Avenue, which he valued at $345,000.

Like Mr. Haynes, Mr. Chang selected three comparable properties to serve as benchmarks for the value of the Property, one of which was the Beach Avenue Property.[6] The other comparables Mr. Chang selected revealed a significant discrepancy between the two appraisals. Whereas the Property is fully attached, the additional comparables Mr. Chang selected were either fully detached (*i.e.*, a free-standing house) or semi-attached. Mr. Chang

---

[6] While both experts used the Beach Avenue Property as a comparable, they characterized it differently. Mr. Haynes characterized it as "semi-attached" and made a $5,000.00 adjustment to account for the difference, assigning the Beach Avenue Property an adjusted value of $393,500.00. Mr. Chang characterized the Beach Avenue Property as "fully detached," and, as such, made a $10,225.00 adjustment, assigning it a significantly higher adjusted value of $412,675.00. An examination of a photograph of the Beach Avenue Property indicates that while it may not be entirely physically attached to the neighboring structure, it cannot reasonably be characterized as a free-standing house.

6

accounted for the difference in the attachment of the properties by subtracting $10,500.00 from the sales price of the detached home. Despite the difference in attachment, there was no adjustment made to the sales price of the semi-attached comparable. Mr. Chang also submitted two additional comparable listings, as opposed to closed sales, to support his appraisal, both of which were semi-attached. Despite this difference, Mr. Chang made no adjustment to the value of these comparables.

Whether a property is attached to neighboring structures is a fairly significant characteristic in valuing the Property and other comparable properties, and Mr. Chang was unable to provide evidence supporting his decision to deduct approximately $10,000 to account for this difference. While he acknowledged at the Hearing that there could be a difference in the market value of a semi-attached home and an attached one,[7] Mr. Chang's price adjustments appear insufficient to accurately reflect this difference. Mr. Chang did not explain to the Court why he only chose detached or semi-attached homes for his valuation, instead of choosing at least one attached home.

Best practices in appraisal discourage selecting properties as comparables that are too dissimilar to the subject property. As Mr. Haynes explained at the Hearing, because the appraisal process only makes a minor price adjustment for the degree of attachment, homes of similar attachment and style should be used in a comparable sales approach.[8] This ensures that the starting price for adjustments is based on the most accurate figures available. The fact that Mr. Haynes used either attached or semi-attached properties as comparables shows that this data was available for use by Mr. Chang, and he declined to use it in his analysis. Because each of the comparable sales used by Mr. Haynes more closely resembles the Property, the Court finds

---

[7] Hr'g Tr. at 68:5-7, July 27, 2011.
[8] Hr'g Tr. 14:24-15:7.

that they represent a more accurate basis for comparison and a better indication of the value of the Property.

Another major difference between the two appraisal reports is whether an adjustment should be made for the difference in the number of rooms in the comparable properties and those in the Property. While both appraisers made an adjustment for differences in gross building area and the number of bathrooms, Mr. Chang made an additional adjustment strictly based on whether each comparable had a smaller or larger number of than the Property; there was no consideration given to the size of the rooms. Because there is already an adjustment made to account for differences in building size, this approach could result in assigning a lower value to a larger home on the basis that it has fewer rooms than a smaller home. While Mr. Chang asserts that a potential purchaser would pay more for a smaller home with more rooms, this conclusion does not withstand scrutiny, as it ignores the common sense possibility of constructing additional "rooms" within a larger home.

Mr. Haynes made various adjustments to the sales prices in order to account for differences between the Property and the comparables, including adjustments for differences in size, number of bathrooms, and other amenities such as the presence or absence of a driveway. Mr. Haynes did not make adjustments for differences in the number of rooms, which he explained is largely accounted for when adjusting for the overall size of the property.

Property appraisal is admittedly a subjective exercise and, as such, the credibility of the appraiser is important. Several inaccuracies and mistakes in the Debtor's appraisal were revealed on cross-examination. The first of these was the lot size listed under Mr. Haynes' third comparable property, which was listed as "11,88 SF." Mr. Haynes explained that the comma was merely misplaced and that the lot size was actually 1,188 square feet. This error is of no

8

significance. In addition, counsel for Bank of America noted that in Mr. Haynes' initial description of the Property, he correctly listed 1960 as the approximate date the subject property was built but subsequently listed the age of the property as approximately 85 years old. Mr. Haynes agreed this was a typographical error and maintained that it did not meaningfully affect the conclusion of his appraisal. For the sake of completeness, the age of each property and specific neighborhood in which it is located should have been provided for all comparables, and Mr. Haynes failed to provide this information in full. Nonetheless, there was no evidence presented at the Hearing that would indicate that any of these minor errors would affect the appraised value of the Property put into evidence by the Debtor. The inaccuracies identified in Mr. Haynes' report reflect careless errors that do not substantially diminish the credibility of the appraiser and his valuation of the Property. Most significantly, Mr. Haynes provided comparables that are, in fact, comparable.

The Court discounts the conclusions of Mr. Chang for the following reasons. First, the comparable property sales used are at odds with his stated methodologies because they were categorically different from the Property. Mr. Chang included no fully attached houses among the five comparables he selected. At the Hearing it became clear that Mr. Chang rejected, without further investigation, the two sales of attached homes that were used by Mr. Haynes. Instead, Mr. Chang used semi-attached or free-standing properties, which are typically more valuable than attached houses. Moreover, his focus on a greater quantity of rooms over the size of the property is also questionable.

The methods used by Mr. Chang were also called into question when he took inconsistent positions regarding Multiple Listing Service ("MLS"). Mr. Chang went to great lengths to emphasize that, in his opinion, a property not listed on MLS will not serve as a valid comparable

9

sale because the purchase price may not be accurate and may not represent the true market value of a particular property.  According to Mr. Chang, a private sale, meaning one not listed on MLS, could inflate a purchase price to allow a buyer to obtain a greater mortgage loan.  At the Hearing, Mr. Chang testified that Mr. Haynes' report was not reliable because two of his comparable property sales were not listed on MLS.[9]

However, two of the comparable sales in Mr. Chang's report were not listed on MLS. One of them, the Beach Avenue Property used as a comparable by both appraisers, was sold on May 21, 2010 and again on January 6, 2011.  While the first sale was listed on MLS, the second purchase was not.  According to Mr. Chang's emphasis on MLS, the earlier sale price of $265,000 would arguably provide a more accurate basis to value the Property, but he chose the latter price of $409,000.[10]  Under Mr. Chang's logic, because the second sale was not listed on MLS, there is no way to know what the buyer actually paid for the home.  Mr. Haynes testified that he did not rely on MLS, despite its wide use in the real estate business, because MLS data reflects listed asking prices as opposed to the actual price a buyer paid for the property.

Based on the foregoing, the Court finds that the value of the Property is $375,000, which is the value contained in Mr. Haynes' appraisal.  Because the value of the Property is less than the amount outstanding on the First Mortgage, the claim filed by Bank of America with respect to the Second Mortgage is not entitled to secured status under section 506(a) of the Bankruptcy Code and is not protected against modification pursuant to section 1322(b)(2).  Therefore, the Court hereby grants the Debtor's motion seeking to modify claim number 9, the proof of claim filed by Bank of America with respect to the Second Mortgage, by voiding the bank's junior lien and classifying claim number 9 as wholly unsecured.

---

[9] Hr'g Tr. 73:11-75:10.
[10] Hr'g Tr. 83:23-84:21.

The parties are directed to settle an order consistent with this decision.

Dated: New York, New York
November 18, 2011

          /s/Shelley C. Chapman
SHELLEY C. CHAPMAN
United States Bankruptcy Judge